**UNITED STATES of America**

v.

**Jackie Sue CAMERON**

**Crim. No. HM80–0308.**

United States District Court,
D. Maryland.

March 9, 1981.

John G. Gill, Jr., Rockville, Md., for defendant.

Russell T. Baker, U. S. Atty., for Dist. of Maryland, Jane W. Moscowitz, Asst. U. S. Atty., for Dist. of Maryland, Baltimore, Md., for plaintiff.

## MEMORANDUM AND ORDER

MURRAY, District Judge.

On September 2, 1980, the defendant, Jackie Sue Cameron, was indicted for making false statements before the Grand Jury in violation of 18 U.S.C. § 1623,[1] during the investigation by said Grand Jury into alleged violations of 18 U.S.C. § 2113 (bank robbery) and other offenses against the United States. Defendant's testimony was claimed to be material[2] to a determination of whether she was concealing leads to further inquiry as to her relationship with one Nathan Joseph as well as the whereabouts of the said Nathan Joseph, who was at that time a suspected participant in an armed bank robbery and who has since been apprehended for bank robberies during which two individuals were shot. The Grand Jury investigation had initially focused on defendant because her automobile was used as an escape vehicle in the robbery of the Lincoln National Bank of Gaithersburg, Maryland on May 30, 1980.

Defendant first appeared before a judicial officer at her arraignment on September 12, 1980, when after her plea of "not guilty", a trial date of November 12, 1980 was set. From the time of her arraignment until on or about October 31, 1980, defendant was represented by Eugene J. Fitzpatrick, Esquire, who had arranged in the interim to have the trial date moved up to November 10 to accommodate a conflict in his schedule. On or about October 31, and without the foreknowledge of Mr. Fitzpatrick,[3] defendant engaged the services of John G. Gill, Jr., Esq., who from that time forward[4] has represented Ms. Cameron up to and including the present motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq.

---

1. 18 U.S.C. § 1623(a) provides:

   Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 1623(c) provides, in pertinent part:

   An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

   (1) each declaration was material to the point in question, . . . .

3. The court remembers well a conference held in chambers on October 31, 1980. Among those present were Mr. Fitzpatrick, who, while engaged in a discovery conference with the government, had apparently just learned by telephone of the retaining of Mr. Gill, and Assistant United States Attorneys Lynne Battaglia and Jane Moscowitz. One of the concerns articulated by the prosecution, which no doubt contributed to their willingness to agree to a continuance, was the fear of some witnesses who reportedly had been threatened with death by the still-at-large Nathan Joseph. It was hoped that the F. B. I. would succeed in apprehending Mr. Joseph before the instant case would go to trial. Joseph was captured the following week, on November 4, 1980.

4. On November 14, 1980 this court issued an order withdrawing the appearance of Mr. Fitzpatrick in this action.

Mr. Gill entered his appearance on November 3, 1980 and moved for a continuance until January 5, 1981 in order to familiarize himself with the defendant's case; there being no objection from the government, January 5 was duly set as the new date for trial of this matter. Also at that time, by order dated November 7, 1980, and upon motion of the defendant, this court, having found that the ends of justice served by the granting of the aforementioned continuance outweighed the best interests of the public and the defendant in a speedy trial, excluded, pursuant to 18 U.S.C. § 3161(h)(8)(A), the period of time from October 31, 1980 to January 5, 1981 from the computation of time under the Speedy Trial Act.

On December 5, 1980, defendant appeared with counsel at the Washington, D. C. offices of the Federal Bureau of Investigation for the purpose of an interview which was conducted while defendant was monitored by a polygraph. Thereafter, on January 2, 1981, the United States sent defense counsel a plea agreement to be executed by the defendant. Under the terms of this agreement, the government agreed to dismiss the indictment against Ms. Cameron in return for her cooperation with federal law enforcement authorities, particularly with regard to testimony at the trials of those who robbed the Lincoln National Bank about anything she might know about the robbery and about Nathan Joseph. Enclosed with the plea agreement was another order excluding time also to be executed by the defendant.

On January 12, 1981, government attorneys contacted Mr. Gill to learn whether the plea agreement and order excluding time had been executed, and they were informed that Mr. Gill was still waiting to hear from his client. Between January 12 and February 4, the government had at least two discussions with Mr. Gill, who continued to have difficulties reaching his client but who did relate that defendant was reluctant to sign the agreement because of threats

against her life and the life of her child made by Nathan Joseph and his relatives. These discussions led to the attachment, with defendant's consent, of a tape recorder to defendant's phone in order to record incoming calls.[5] While all this was going on, the court had, at the government's request, removed from its calendar the trial in this matter, which had been set for January 5, 1981.

By February 9, 1981, uncertainty as to whether the plea agreement would ever be executed impelled the government to move for immunity for Ms. Cameron in connection with her testimony in a trial before Judge Young scheduled to commence on February 17, *i. e. United States v. Pendarvis*, Crim. No. Y–80–0423. On the date of the Pendarvis trial, the United States withdrew the plea offer to Ms. Cameron and the next day advised this court that her trial should be recalendared. Ms. Cameron, having been subpoenaed to testify at the Pendarvis trial, refused to answer questions on the grounds of threats that had been made to herself and to her child, and of self-incrimination. Upon the proffer of appropriate immunity papers by the prosecutor, Judge Young apparently dissuaded the government from pressing for a contempt citation against Ms. Cameron. The jury in that case hung, with only a 9–3 vote favoring conviction.

On February 25, 1981, a pretrial conference was held in Ms. Cameron's case in chambers, at which time Mr. Gill advised the court of his intention to seek a continuance. The government's position was that, although it might be advantageous to continue Ms. Cameron's trial in the hopes of procuring her testimony in the upcoming bank robbery trial, trial should proceed on March 10, 1981, as it had been rescheduled.

Mr. Gill never filed his motion for a continuance. Instead, without advising the court of his change of intentions, he mailed in a motion to dismiss this case for exceeding the time permitted by the Speedy Trial Act. The court learned of this motion via

---

**5.** Originally, a wiretap was proposed, but defense counsel claims that this became impracti-

cable because defendant's telephone number had recently been changed.

telephone from Mr. Ty Cobb, Assistant United States Attorney, on Friday, February 27, 1981. Although Mr. Gill claims to have mailed his papers on February 26, 1981, the day following the pretrial conference, neither the court nor the government had received them as of the hearing held Monday morning, March 2, 1981 on an emergency basis, until Mr. Gill arrived and personally delivered copies. Having heard oral argument and having had sufficient time to give full consideration to the papers filed by both sides, the court is now prepared to rule on the motion.

The operative time limitation imposed by the Act is found in 18 U.S.C. § 3161(c)(1), which provides in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs.*
>
> .     .     .     .     .

(emphasis added).

The later of the relevant dates mentioned in this provision was September 12, 1980, the day defendant was presented before a judicial officer of this court for arraignment. Thence to October 31 was 48 days, and the time from October 31 to January 5, 1981 was excluded. Defendant argues now that, as the time subsequent to January 5 has not been excluded, the seventy-day limit has long since passed and the case ought to be dismissed. Under 18 U.S.C. § 3162(a)(2), "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section

3161(h), the information or indictment shall be dismissed on motion of the defendant." Defendant argues further that the case should be dismissed with prejudice, and the standards for that determination are also set forth in § 3162(a)(2):

> ... In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

In opposition to defendant's motion, the United States asks the court to exclude time from the Speedy Trial computation for two separate periods in this case's history: the period from September 12, 1980 to October 31, 1980, during which time defendant was represented by Mr. Fitzpatrick, and the period from January 5, 1981 to February 17, 1981, during which time the plea agreement was outstanding.[6] Granting either of these exclusions would suffice to place this case back within the seventy day limit. Defendant argues, however, that the Act does not permit the court to render such an order *nunc pro tunc,* and that an exclusion is permissible only if made contemporaneously with the events the court deems to be within the exclusion guidelines of § 3161(h).

The relevant subsections in this type of case are §§ 3161(h)(8)(A) and 3161(h)(8)(B)(i), which provide as follows (emphasis added):

> (h) The following periods of delay shall be excluded...

---

**6.** Actually, the government's original request was to exclude time from January 5, 1981 to March 10, 1981, the date of the rescheduled trial. At oral argument, however, the government conceded that exclusion through February 17, the point at which it became clear that Ms. Cameron had no intention of cooperating, was perhaps more precise. The court finds the time through February 17 to be a more appropriate request although arguably defense counsel's representation to the court at the in-chambers conference on February 25, 1981 that he would file a motion for continuance by February 27, 1981 would justify exclusion through that date.

. . . .

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial. *No such period of delay* resulting from a continuance granted by the court in accordance with this paragraph *shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*

(B) *The factors, among others, which a judge shall consider* in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case *are* as follows:

(i) *Whether the failure to grant such a continuance* in the proceeding *would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.*

Nowhere in the emphasized language of subparagraph (A) is there a requirement of contemporaneity, as urged by the defendant, nor is there a proscription of entering such findings *nunc pro tunc.* Furthermore, the court can find nothing in the legislative history to suggest such a Congressional intent, nor has defense counsel identified any such history. To the contrary, the court's reading of the Act as a whole, and of the emphasized language in subparagraph (B) in particular, leads to the conclusion that Congress intended the courts to use their discretion and experience in deciding such matters on a case-by-case basis.

In the only reported decision that has any bearing on the issue to be decided herein, the court held that time was excludable during which the defendant was "unavailable" by virtue of his recalcitrance. *United States v. De Freitas,* 410 F.Supp. 241 (D.N.J.1976), *aff'd without opinion,* 556 F.2d 569 (3d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977) was a prosecution for bank robbery under 18 U.S.C. § 2113. De Freitas had the Federal Public Defender appointed to defend him initially but then engaged private counsel. His trial resulted in a hung jury, and a mistrial was declared. Prior to discharge of the jury, retained counsel informed the court on the record that he had only been retained to represent the defendant through trial and through sentence if convicted, but no further; that he was no longer De Freitas' attorney; and that De Freitas desired to have counsel appointed. More than a month's delay transpired between the court's direction that retained counsel submit the appropriate affidavit of indigency on defendant's behalf and the filing of said affidavit. The court then appointed the Federal Public Defender, but De Freitas phoned that office to say that he did not wish to be represented by a public defender because he reposed no confidence in such representation. Subsequent interviews with attorneys from the Public Defender's office, including the Public Defender himself, failed to dissuade De Freitas from insisting that the court appoint his former retained counsel as assigned counsel. In that part of the District Court's opinion dealing with the excludability of time under the Speedy Trial Act, the court ruled that the period from the appointment of new counsel after the mistrial be excluded because, in part, the defendant had "effectively made himself 'unavailable' by his recalcitrant refusal to work with the Federal Public Defender, already assigned, to prepare for retrial...." 410 F.Supp. at 243.

In her motion to dismiss, defendant alleges that she "has suffered extreme mental anguish due to pressures brought against her by her own counsel and counsel for the government in urging her to testify, and by the threats of Nathan Joseph, intim-

idating her not to testify."[7] Defendant also admits "[t]hat at all times counsel . . . have acted in good faith, and the delays involved were due to their focusing on legitimate interest rather than any artifice to attempt to trigger the sanctions of the speedy trial act." The court is fully prepared to believe this of Mr. Gill, who has evinced a genuine concern for the welfare of his client and her child, and of the Assistant United States Attorneys, who have in the past exhibited not only that concern for the defendant's safety but also a willingness to recommend dismissal of the perjury indictment in return for securing her testimony in all proceedings at which it might be relevant. The court does not take the same view, however, with regard to defendant's good faith in her most recent actions.

As the government notes in its opposition, the prosecution was fully prepared to go to trial on November 10, 1980, and only the defendant's decision to substitute counsel on the eve of trial prompted the original delay. It certainly does not appeal to this court's sense of justice to permit the defendant to utilize the period prior to her election to change counsel in a calculation of time designed to compel dismissal of her case.[8] While it is, of course, possible that this conduct was not of the same willfulness as was the conduct in *De Freitas*, the court can find no principled way of distinguishing the two situations, particularly where the danger in making such a distinction is that any criminal defendant could elect similar last-minute changes in counsel specifically as part of a scheme to prolong matters beyond the statutorily permissible limits. Certainly, defendant's later conduct cannot be described as anything other than recalci-

trant, and the combination of that 42-day delay with the initial 48-day duration of effectively wasted time takes us beyond the 70 days permitted by the Act.

Accordingly, the court hereby finds (1) that the ends of justice served by permitting the defendant to change counsel on October 31, 1980 outweigh the public interest and the defendant's own interest in a speedy trial; and (2) that the ends of justice served by extending to the defendant an opportunity to have her case dismissed in exchange for cooperating with the government in prosecuting cases of alleged armed bank robbery outweigh the interests of the public and of the defendant herself in a speedy trial on the perjury charges. The court therefore holds that the time periods from September 12, 1980 to October 31, 1980 and from January 5, 1981 to February 17, 1981 are excludable time periods for purposes of Speedy Trial computation. The court also rejects defense counsel's argument that these findings may not be made *nunc pro tunc*, for the reasons hereinbefore set forth. Additionally, the court notes for the record, pursuant to § 3161(h)(8)(B)(i), that the failure to grant an exclusion in this case would result in a grave miscarriage of justice.

■ Of course, as defense counsel points out, dismissing this case without prejudice would not fall within the other language of subsection (h)(8)(B)(i), in that a continuation of the proceeding would not be impossible, especially insofar as the government indicated at oral argument that, in that circumstance, it would reindict without hesitation. Given that representation by the

---

7. The United States is now prepared to dispute the truth of these threat allegations. The only evidence of these threats is Ms. Cameron's own assertions that they were made. The government asserts that no threats have been recorded during the time defendant's telephone has been monitored, and that defendant's expressed fears are inconsistent with her visiting Nathan Joseph in prison.

The court, however, has heard no testimony on this aspect of the case, and finds it unnecessary to decide this question in view of its disposition of the instant motion to dismiss.

8. There are few more fundamental principles of justice than the principle of equitable estoppel, the application of which to defendant's conduct in this case is by no means unwarranted. Furthermore, even though defendant did not fail to move for dismissal prior to trial and thus did not waive her right pursuant to § 3162(a)(2), making this motion on the eve of trial and under the circumstances of this case does not recommend itself to the court's sense of fairness.

government, however, the court finds that dismissing this case without prejudice only to have it begin anew would be a useless act, and the court is unwilling to indulge in such a merry-go-round. By the same token, as alleged perjury before the Grand Jury is a serious offense, and as the reprosecution of this case would not adversely affect either the administration of the Speedy Trial Act in future cases or the administration of justice in general, this court could not (even if it were so inclined), consistent with § 3162(a)(2), dismiss this case with prejudice. Thus it can readily be appreciated that even if refusal to dismiss this case without prejudice is error, the imminence of reindictment makes it harmless error: harmless, that is, to the rights of defendant under the Act, but quite harmful to the United States in terms of the expense and inconvenience in presenting the matter anew before the Grand Jury and recommencing the entire pretrial process.

For the foregoing reasons, therefore, it is this 9th day of March 1981, by the United States District Court for the District of Maryland,

*ORDERED*:

(1) that defendant's motion to dismiss for violation of the Speedy Trial Act be, and the same hereby is, *Denied* ;

(2) that trial of the instant case be held, as scheduled, on March 10, 1981; and

(3) that the Clerk of the Court mail a copy of this Memorandum and Order to each of the parties.