**UNITED STATES of America, Appellee,**

v.

**Ramon Eli Barreto TALAVERA, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Tomas Reyes PENA, Appellant.**

**Nos. 80–1481, 80–1486.**

United States Court of Appeals, First Circuit.

Argued Oct. 6, 1981.

Decided Jan. 14, 1982.

Certiorari Denied May 17, 1982.

See 102 S.Ct. 2245.

Scott Kalisch, San Juan, P. R., for appellant Ramon Eli Barreto Talavera.

Harry Anduze Montano, Santurce, P. R., for appellant Tomas Reyes Pena.

Carolyn L. Gaines, Atty., Dept. of Justice, Washington, D. C., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and WYZANSKI,* Senior District Judge.

COFFIN, Chief Judge.

This case raises a series of issues concerning the joint trial of two defendants for their roles in cocaine transactions in late July, 1979. After reviewing each of the defendants' arguments, we are persuaded that the convictions should be affirmed.

The evidence at trial consisted largely of the testimony of paid informant Carmen Vega Collazo, the testimony of Drug Enforcement Administration Agent James Rivera, and a videotape and audiotape that had recorded transactions within Vega's apartment. A fair evaluation of that evidence would allow a jury to draw the following conclusions.

At about 9 p. m. on Saturday, July 28, 1979, appellant Tomas Reyes Pena made a telephone call to informant Vega. He told her he had some good cocaine and would bring her a sample if she could provide a buyer. She arranged for undercover agent Rivera to pose as a buyer. At about 11 p. m., Reyes and Jose Antonio Ortiz delivered the sample to Vega's apartment. Reyes said that he would call back on Monday to arrange for the sale of the two ounces of cocaine from which the sample was taken.

On Monday he called to say that his supply had been held up and he could not make it until Tuesday.

At about 10 p. m. on Tuesday, July 31, Reyes came to Vega's apartment, accompanied by appellant Ramon Eli Barreto Talavera and Barreto's wife. Reyes showed Vega the two ounces of cocaine and weighed it on a scale that Vega had set out on her living room table. Barreto then moved the two ounces off the scale and weighed two packages of cocaine that he had removed from his shoulder bag. He spent a substantial amount of time meticulously weighing and bagging the drug. The packages weighed one-eighth kilogram (4.4 ounces). Since Agent Rivera had not yet arrived, Reyes, Barreto, and Barreto's wife left to deliver the one-eighth kilogram to someone else. After they returned, Agent Rivera arrived. He sat down at the table and weighed the two ounces of cocaine on the scale and then gave $3,200 to Vega, who in turn gave it to Reyes. Vega then went into the bedroom and brought out some heroin. She showed it to the agent, who suggested that Reyes try some. Reyes told her to show it to Barreto "because he likes it". Barreto walked over to the table and sampled the heroin by bending over and inhaling it through his nose ("snorting"). He walked away from the table, and then returned for a second "snort". After further discussion, the meeting broke up.[1]

At trial, three counts were presented to the jury. The first count charged Reyes with aiding and abetting, possession, and distribution of the sample of cocaine on July 28,[2] in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The second count charged both appellants with aiding and

---

* Of the District of Massachusetts, sitting by designation.

1. The 20-to-25 minute videotape, filmed by a camera secreted within the informant's television set, explicitly corroborated her testimony regarding almost all the events described in this paragraph. Approximately the final four minutes of the tape dealt exclusively with the heroin episode. The only activities that could not be seen on screen involved Reyes, who was seated just out of view during the last five minutes. Those activities were his actual receipt of the money from Vega and his suggestion that the heroin be given to Barreto. Both of those events were implicitly corroborated, however, by the facial expressions of the on-screen actors.

2. In the original indictment, Ortiz was indicted along with Reyes on this count. The charges against Ortiz were dismissed before trial.

abetting each other, possessing, and distributing the two ounces of cocaine purchased by Agent Rivera on July 31, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The third count charged Barreto with possessing with intent to distribute the one-eighth kilogram of cocaine on July 31, in violation of 21 U.S.C. § 841(a)(1). The jury found Reyes guilty of counts one and two, and Barreto guilty of counts two and three.

Appellants ask us to reverse the trial court for the following reasons:

1. Both appellants claim that the trial court should have severed their trials and should have suppressed all testimony and evidence regarding Barreto's sampling of the heroin.

2. Barreto claims prejudice in sentencing because the presentence report contains an allegedly unsupported assertion.

3. Reyes contends that the U.S. Attorney failed to disclose exculpatory evidence, that the evidence against him was insufficient, that he was denied effective assistance of counsel, and that he was sentenced arbitrarily and mechanistically.

We respond to these contentions in that order.

Both defendants contend that they should not have been tried together in a single proceeding. First we review whether they were properly joined as a matter of law under Fed.R.Crim.P. 8(b). Rule 8(b) permits joinder of the three different counts if we conclude that the delivery of the sample on July 28, the distribution of two ounces on July 31, and the possession of one-eighth kilogram on July 31 were part of "the same series of facts or transactions constituting an offense or offenses".[3]

This circuit has written at length concerning the standards applied in determining what constitutes a single "series of acts or transactions". *See, e.g., United States v. Luna*, 585 F.2d 1 (1st Cir. 1978); *United States v. Martinez*, 479 F.2d 824 (1st Cir. 1973); *King v. United States*, 355 F.2d 700 (1st Cir. 1966). A series means something more than similar acts. *King v. United States, supra*, 355 F.2d at 703. The reason is that Rule 8(b) strikes a compromise between each defendant's right to have his own guilt considered separately and the presumptive practical benefit to the government and the court of a consolidated proceeding. *United States v. Martinez, supra*, 479 F.2d at 827–28. To protect the defendant's rights,

"this possibility of benefit should explicitly appear from the indictment or from other representations by the government before trial. Classic examples of such a benefit are when there is an overlapping of issues, . . . or when defendants are charged with conspiracy to conceal a crime that part of their number are charged with committing . . . ." *King v. United States*, 355 F.2d at 704.

We have no difficulty in concluding that the cluster of cocaine-related acts at issue in this case were a single "series of acts or transactions". The delivery of the sample on Saturday was a prelude to the delivery of the two ounces on Tuesday. Evidence of either transaction would undoubtedly have been admissible in a separate trial based on the other one, in order to prove the defendants' intent to distribute. And the evidence used to prove the delivery of two ounces on Tuesday was virtually inseparable from the evidence used to prove that Barreto possessed an additional one-eighth kilogram with intent to distribute it. The practical benefit to the court and government of a consolidated proceeding is undeniable.

Given proper joinder, we are asked to find that the trial court erred in denying severance under Fed.R.Crim.P. 14.[4]

---

3. Fed.R.Crim.P. 8(b) provides:

"Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

4. Fed.R.Crim.P. 14 provides:

Severance motions are addressed to the sound discretion of the trial judge, and their denial will be reviewed only for abuse. *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir. 1977). Appellants contend that the trial judge abused his discretion because they planned to present antagonistic defenses, *viz.*, Barreto planned to argue that he had nothing to do with the two ounces of cocaine, that it belonged only to Reyes, and that he was being prosecuted only because he had associated with such a bad man. It is well settled that "antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other". *United States v. Davis*, 623 F.2d 188, 194 (1st Cir. 1980), *quoting United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). Severance is required only where the conflict is so prejudicial and the defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. *Id.* Here, Reyes did not deny that he possessed the cocaine; he only denied distributing it and having that intent. Barreto denied both possession and intent to distribute. These defenses become irreconcilable only if Barreto is allowed to make the further allegation that Reyes intended to distribute the cocaine. The trial court upheld Reyes's objections to any attempt to make such argument. Whatever minor conflicts may have existed between the defendants' approach to the case, they have not made the "strong showing of prejudice" necessary to show an abuse of discretion by the trial court. *See United States v. Richman*, 600 F.2d 286, 299 (1st Cir. 1979).

Next, both appellants challenge the trial court's decision to admit into evidence the testimony regarding the heroin episode, and the portions of video and audio tapes portraying that episode.[5] At trial, Barreto preserved this issue by objection to Vega's testimony about heroin. The court's denial of his motion made it clear that any similar objection to the relevant portions of the tapes would have been futile. The appellants suggest that the evidence was relevant not to any material issue, but only to showing that Barreto was a bad person who knew about using drugs. They note that the government is not permitted to use evidence of bad acts to show that someone has a bad character, from which to infer a propensity to commit the crime with which he is charged. Fed.R.Evid. 404(b).[6] *See Tigges v. Cataldo*, 611 F.2d 936, 938 (1st Cir. 1980). They argue further that whatever legitimate relevance the evidence may have had was substantially outweighed by its unfair prejudicial effect.

■■ We begin with the issue of relevance under Fed.R.Evid. 401, 402. We cannot agree that the heroin transaction had absolutely no relevance to a material issue in the case. Barreto's defense was based upon the argument that he was an innocent bystander during the distribution of the two ounces of cocaine. To convict him, the government had to show that he "associate[d] himself with the venture, that he participate[d] in it as something he wished to bring about, that he [sought] by his action to make it succeed". *United States v. Martinez*, 479 F.2d 824, 829 (1st Cir. 1973), *quoting United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (editorial brackets in *Martinez*). The government proved Barreto's participation in the cocaine distribution

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or defendants in an indictment or information or by such joinder for trial together, the trial court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

5. Their general contentions that the tapes as a whole were inflammatory are frivolous. *See United States v. Richman, supra*, 600 F.2d 286, 294 (1st Cir. 1979).

6. Fed.R.Evid. 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

by presenting a picture of the supportive and mutually reinforcing relationship between Barreto and Reyes during the sale of the two ounces. The heroin episode immediately after the sale helped—even if only slightly—to confirm that relationship. The episode, like Barreto's removal of the two ounces from the scale, showed that he was at ease in circumstances promoting the abuse of illicit drugs. And Reyes's suggestion that the (expensive) heroin be sampled by Barreto could reasonably be interpreted as indicating that Reyes knew Barreto well and thought of him as a business associate who should be "cut in" on the various opportunities presented that evening. *Cf. United States v. Contreras*, 602 F.2d 1237 (5th Cir. 1979) (evidence of cocaine was immediately after heroin transaction for which defendant is prosecuted shows knowledge); *United States v. Lucero*, 601 F.2d 1147 (10th Cir. 1979) (in forgery prosecution, drug discussion relevant to parties' relationship and intent).

This is not the end of analysis of admissibility. Under Fed.R.Evid. 403, a further step is required, that of determining whether or not the probative value was substantially outweighed by its unfair prejudicial effect. Here, although proper objection to testimony regarding the use of heroin was made, the court made no such determination but appears to have merely accepted the erroneous arguments of the prosecutor that anything "that happened in front of [witness Vega]" was admissible and that the heroin incident was part of the videotape.[7] Were it reasonably possible that the testimony and videotape showing of the heroin snorting unfairly influenced the verdict, we might well find reversible error in light of the low level of relevance, since the deference ordinarily given to a trial court's ruling, *United States v. Wright*, 573 F.2d 681, 683 (1st Cir. 1978), would not be owing. *See United States v. Herman*, 589 F.2d 1191, 1197–98 (3d Cir. 1978); *United States v. Dwyer*, 539 F.2d 924 (2d Cir. 1976). But the evidence of the defendants' guilt was overwhelming, including a videotape depicting fully the precise criminal activity charged. And the trial was conducted in a manner that would encourage the jurors to control any irrational prejudices that the "snorting" episode would have inspired. Under such circumstances, we do not believe that the admission of the evidence deprived either defendant of a substantial right. Fed.R.Crim.P. 52(a).

■ The appellants' remaining contentions do not require extensive treatment. Barreto objects that the Drug Enforcement Administration's presentence report contains the unsupported suggestion that he was Reyes's supplier of drugs. He therefore argues that his sentence was unconstitutional under the rule of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). This argument is refuted by the fact that the district court explicitly disclaimed reliance on that portion of the presentence report. *See United States v. Masri*, 547 F.2d 932, 937 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977).

■ Reyes argues that the government failed to disclose exculpatory evidence. The government had received an indictment of Jose Antonio Ortiz for allegedly accompanying Reyes to Vega's apartment in order to deliver the sample of cocaine on July 28. The government dismissed the charge against Ortiz before trial. Subsequently, Ortiz's attorney saw the U.S. Attorney in the hall and mentioned that if the government had not dismissed the indictment, he would have sought to present an alibi defense. Reyes contends that this statement constitutes "exculpatory evidence" within the meaning of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), such that the U.S. Attorney should have disclosed it to Reyes. The U.S. Attorney had no reason to believe that Ortiz's supposed alibi was true, and he was under no duty to investigate it. Even if the U.S. Attorney had known the alibi to be true, his failure to disclose would not require reversal: the ali-

---

7. Obviously, not everything that happens to be caught on a single tape is automatically relevant to a given case, let alone admissible. Nor is it always impossible to play part of a tape without playing the entire thing. In this case, for example, it was certainly feasible to stop the tape before the heroin episode.

bi, which would have served only to impeach further the credibility of a paid informant, would not have created "a reasonable doubt that did not otherwise exist". *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976); *Mains v. Butterworth*, 619 F.2d 83 (1st Cir. 1980).[8]

Reyes argues next that the evidence against him was insufficient, suggesting that Vega's testimony should have been inadmissible because she was a paid informant. This argument is plainly frivolous. *See, e.g., United States v. Maguire*, 600 F.2d 330 (1st Cir.), *cert. denied*, 444 U.S. 876, 100 S.Ct. 159, 62 L.Ed.2d 104 (1979).

Reyes also argues that he received ineffective assistance of counsel. The Constitution requires only that the performance of a trial attorney be "within the range of competence expected from attorneys in criminal cases". *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978). The performance of Reyes's attorney was safely within that range. Of the fifteen "failures" by the attorney that Reyes alleges on appeal, the vast majority are failures to object to actions by the district court that we have upheld in this opinion. "Counsel is not required to waste the court's time with futile or frivolous motions". *United States v. Wright, supra*, 573 F.2d at 684. The remaining allegations pertain to (1) failure to become sufficiently familiar with the prosecution's case, (2) failure to become aware of and pursue the alibi defense that codefendant Ortiz was planning to present, (3) failure to present an entrapment defense, and (4) the decision to concede in argument that Reyes had possession of the cocaine. The first allegation is belied by the record, which shows that counsel sought and received many documents from the government prior to trial. The second allegation falls short of a statement that counsel committed an error that "clearly resulted from neglect or ignorance", *United States v. Bosch, supra*, 584 F.2d at 1121, since Ortiz's alibi was only

tangentially relevant to Reyes's defense and since Reyes's counsel had no apparent reason to know the alibi existed. The third and fourth allegations pertain to trial tactics which, in light of the evidence presented at trial, seem to have been intelligent and fully consistent with the most zealous defense possible. The decisions easily satisfy the requirement that counsel "conduc[t] the defense with reasonable knowledge and skill with an exercise of knowledgeable choices of trial tactics". *Id.* at 1122.

Finally, Reyes argues that the sentences imposed by the trial court were "arbitrary", "excessive", "disparate", "mechanistic", and showed a failure to exercise discretion. Reyes was initially sentenced to consecutive terms of 15 years each for counts I and II, with special parole terms of three years on each count to run concurrently. After he moved for reconsideration of sentence, the term of the first sentence was reduced to seven years, and the special parole term under count II was lengthened to five years. Barreto was sentenced to concurrent terms of ten years each for counts I and II, with special parole terms of three years on each count to run concurrently. When a trial judge exercises informed discretion in imposing a sentence that lies within the prescribed statutory range and does not contravene the Eighth Amendment, and when there is no evidence that the judge considered impermissible factors, the sentence is not subject to substantive review by an appellate court. *See Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Tucker, supra*, 404 U.S. at 443, 92 S.Ct. at 589. Our review of the record convinces us that the trial court exercised careful and informed discretion in imposing sentences and considered no impermissible factors. The sentence was not unconstitutionally out of proportion to the severity of the crime. *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (life imprisonment permissible for recidivist who fraudulently used credit card, cashed a

---

**8.** We need not decide whether, as a general proposition, failure to disclose impeachment evidence would always constitute reversible error if it created a new reasonable doubt, or

whether it might face an even stiffer standard of "probable acquittal". *See Garrison v. Maggio*, 540 F.2d 1271 (5th Cir.), *cert. denied*, 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1976).

forged check, and obtained $120.75 by false pretenses). Reyes's contention that the consecutive sentences imposed under the two different counts violated Double Jeopardy lacks merit. Each count clearly required proof of facts that the other did not. *See Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931).

Finally, the trial court's decision to lengthen the special parole term as part of the resentencing did not violate Double Jeopardy. Reyes's sentence was, in effect, changed from 30 years and 3 years special parole to 22 years and 5 years special parole. Since special parole under 21 U.S.C. § 841(b) (1976) is a clear improvement over imprisonment, the new sentence is a reduction under Fed.R.Crim.P. 35. *Cf. Lam Man Chung v. United States,* 419 F.Supp. 1287, 1289 (S.D.N.Y.1976) (viewing sentence and special parole term "as a package").

*The convictions of the appellants are affirmed.*