**UNITED STATES of America, Appellee,**

v.

**Juan C. SANTAMARIA,**
**Defendant, Appellant.**

**No. 85–1679.**

United States Court of Appeals,
First Circuit.

April 23, 1986.

Paul J. DiMaio, Providence, R.I., for defendant, appellant.

* Of the United States Court of International

James H. Leavey, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

Defendant-appellant Juan Santamaria appeals from denial of his motion to correct or reduce sentence, Fed.R.Crim.P. 35, contending that the manner in which he was sentenced violated due process. Santamaria argues also that the district court erred in failing to attach to the presentence investigation report its findings as to contested information in the report. Additionally, the government has stated for the first time on this appeal that the court erred in imposing a special parole term. We affirm, with modifications, and remand.

### I. Introduction

Santamaria was indicted for (1) conspiring in violation of 21 U.S.C. § 846 to knowingly and intentionally distribute and possess with intent to distribute in excess of one kilogram of a mixture containing cocaine, *id.* § 841(a)(1) and (b)(1)(A), and (2) knowingly and intentionally possessing with intent to distribute one kilogram or more of a mixture containing cocaine, *id.* Santamaria pleaded guilty to both counts of the indictment pursuant to a plea agreement providing for a maximum sentence of twenty years, with a fine and a special parole term to be set in the discretion of the court. He was sentenced on Count II to a term of twenty years, a special parole term of ten years, and a fine of $50,000, and on Count I to a concurrent suspended sentence of ten years. Subsequently, his motion to correct or reduce sentence was denied. This appeal followed.

### II. Background

On November 15, 1984, Santamaria was recruited by an individual in Rhode Island to go to Florida to pick up four kilograms of cocaine. He then paid his wife, from whom he was separated, $2,000 to accompany him to Florida, where he picked up

Trade, sitting by designation.

the cocaine, then returning to Rhode Island. On December 5, 1984, Santamaria again went to Florida with his wife, paid $100,000 for the cocaine previously received, obtained five additional kilograms on consignment, and drove back to Rhode Island with the cocaine hidden in secret compartments built into his Porsche. While en route he was apprehended. A search of his house in Rhode Island revealed additional cocaine, scales, and other implements used in the distribution of cocaine.

Shortly after his arrest, Santamaria made two voluntary statements in which he provided the details of the November and December transactions and gave the names of a number of major cocaine dealers. Thereafter, however, he stopped cooperating, with the result that the information he provided was of little use to the government. Santamaria then moved to suppress the statements he had made during the course of his cooperation. At the hearing on that motion, he testified that he had stopped cooperating out of fear, and that he initially had been misled by government agents into believing that any information he provided would not become public. The court found, contrary to this testimony, that there had been no deception by government agents.

Information available to the court at the time of sentencing included the fact that Santamaria was a twenty-two-year-old unemployed high school graduate with some community college education and no criminal record. At the time of his arrest, he owned four cars: the Porsche in which he had transported the cocaine; two cars admittedly purchased with the proceeds of drug sales; and a car purchased for $8300 in cash shortly after the November trip to Florida. Bank records showed that he had deposited an additional $11,300 in cash shortly after that trip. Santamaria's four cars had been forfeited, as had his house, following a magistrate's determination that although the house was held in the name of his mother and stepfather, Santamaria had provided the $30,000 cash down payment.

At sentencing, defense counsel contested two aspects of the presentence report. The first objection was to a characterization of Santamaria's refusal to continue cooperating as reflecting a "change of heart." Counsel argued that because the defendant had initially been under a misapprehension as to the manner in which the information he provided would be used, it was misleading to say that he had had a "change of heart." The court indicated that its understanding of the phrase was that when Santamaria had realized cooperation would require him to testify, he decided that was not his original intention and that he would not do it. Defense counsel agreed with this characterization.

Counsel's second objection concerned an assertion in the presentence report that Santamaria had been involved in a Canadian drug transaction. Rather than granting counsel's request for a hearing on that aspect of the report, the court indicated that it would not take the alleged transaction into account.

### III. *Alleged Violations of Due Process*

■ Santamaria contends that statements of the court indicate that it did in fact consider the Canadian transaction, despite its representation to the contrary, and that the denial of a hearing regarding that transaction was thus a denial of due process. The statements objected to include the court's comments at sentencing that Santamaria was a "kingpin of this industry that is rattling this country and eating alive our young," and that he was a "villain" and "beyond rehabilitation." Santamaria argues that there was nothing in the facts before the court to support these conclusions, and that the court therefore must have taken the Canadian transaction into account. But given the serious nature of the drug transactions that provided the basis for Santamaria's plea, and in light of the additional information properly before the sentencing court, there is no reason to doubt the judge's assertion that he was not considering the Canadian transaction. *Cf. United States v. Gonzales*, 765 F.2d 1393, 1397 (9th Cir.1985) (district court's state-

ment that it will disregard certain matter in presentence report must be taken at face value), *cert. denied,* —— U.S. ——, 106 S.Ct 826, 88 L.Ed.2d 798 (1986). Thus, there was no constitutional violation, since there is no due process right to contest the accuracy of information not relied upon by the court. *See United States v. Brown,* 715 F.2d 387, 389 (8th Cir.1983) (due process affords the defendant no right to rebut evidence not relied upon in the sentencing process).

■ Santamaria also argues that the comments of the district court indicated that it employed a rigid sentencing policy rather than considering the defendant as an individual. *See United States v. Foss,* 501 F.2d 522, 527 (1st Cir.1974) (sentences dictated by a mechanistic concept of what a particular type of crime deserves may be vacated by appellate court); *accord United States v. Miller,* 589 F.2d 1117, 1138 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct 1499, 59 L.Ed.2d 771 (1979). We find the contention without merit. For the record shows specific consideration by the court of factors peculiar to this defendant, including the use of his wife as a "front," the secret compartments in his car, the fact that greed was apparently his only motive, and the amount of narcotics involved.

■ Santamaria further argues that the court penalized him because he had refused to continue to cooperate. This contention is based in part upon the court's statement that "[w]hat has been termed as forthrightness and candor I see as a cautious venturing forward governed only by self-interest, without the slightest sign of genuine remorse or even a true recognition of the enormity of the wrong which you have committed."

We cannot agree that this or any other statement of the district court indicates that the defendant was being penalized for his failure to cooperate. To the contrary, the court's statements indicate merely an assessment that the defendant's limited cooperation had reflected only self-interest, and not a step towards rehabilitation. Accordingly, the court did not abuse its dis-

cretion by its apparent refusal to consider that cooperation as a ground for leniency. *See United States v. Reed,* 674 F.2d 128, 129–30 (1st Cir.1982) (the premium to be placed on cooperation is a policy judgment left to the discretion of the trial court); *United States v. Miller,* 589 F.2d 1117, 1138 (1st Cir.1978) (there is a distinction between punishing a defendant for asserting his innocence and merely considering a failure to recant when evaluating his prospects for rehabilitation), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *cf. Roberts v. United States,* 445 U.S. 552, 556–61, 100 S.Ct. 1358, 1362–65, 63 L.Ed.2d 622 (1980) (cooperation with the authorities is a laudable endeavor that bears a rational connection to a defendant's willingness to change his behavior); *United ed States v. Tracey,* 675 F.2d 433, 441 (1st Cir.1982) (defendant's lack of cooperation with the government is a legitimate factor in sentencing).

■ More troubling is Santamaria's contention that he was denied due process by the sentencing court's conclusion that: "I think from what I know of your case that you are beyond rehabilitation, that punishment for punishment's sake is deserving, that punishment for the sake of deterrence is deserved...." Santamaria argues that a conclusion that he—a twenty-two-year-old with no prior criminal record—was beyond rehabilitation lacked any foundation in the record. He therefore argues that his sentence was based in part upon a false premise, and so violates due process.

A sentence within statutory limits is generally not subject to substantive review. *See Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052–53, 41 L.Ed.2d 855 (1974) (well-established doctrine bars review of the exercise of sentencing discretion); *United States v. Talavera,* 668 F.2d 625, 632 (1st Cir.), *cert. denied,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982). However, a case will be remanded for resentencing if a sentence was based on erroneous information or erroneous assumptions of constitutional magnitude. *See*

*United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972) (case would be remanded for reconsideration of sentence where sentence was founded at least in part upon misinformation of constitutional magnitude); *United States v. Kimball*, 741 F.2d 471, 475 (1st Cir.1984) (sentence within statutory limits and not based on misinformation of constitutional magnitude is within the discretion of the sentencing judge); *United States v. Tracey*, 675 F.2d 433, 441 (1st Cir.1982).

The sentencing court's conclusion as to Santamaria's being ·beyond rehabilitation did not amount to an erroneous assumption of constitutional magnitude. First, in considering Santamaria's prospects for rehabilitation, the court acted within the proper bounds of discretion. *See United States v. Grayson*, 438 U.S. 41, 47–48, 98 S.Ct. 2610, 2614, 57 L.Ed.2d 582 (1978) (to an unspecified degree the sentencing judge is obligated to make his decision on the basis, among others, of predictions regarding the defendant's potential or lack of potential for rehabilitation). Second, although, given Santamaria's youth and lack of a criminal record, this court might not similarly have concluded that Santamaria was "beyond rehabilitation," it does not follow that that conclusion of the sentencing court was without basis in the record.

Santamaria's November and December drug transactions had involved substantial amounts of cocaine of a high degree of purity; the defendant apparently had access to large amounts of cash, and, although unemployed, his lifestyle was apparently luxurious. He had obtained large amounts of cocaine on consignment, arguably suggesting that he was known, trusted, and no beginner in the area of drug dealing. He owned a car with specially constructed compartments in which to hide drugs; he was able to provide the names of major drug dealers; and he had employed his estranged wife to assist him in his drug transactions. Additionally, the district court had concluded that Santamaria's initial cooperation was based solely on self-interest rather than on a desire to reform his behavior, and had rejected his testimony

that he was misled by federal agents. In light of all this information, we cannot say that the court's assessment of Santamaria's prospects for rehabilitation was so unreasonable as to rise to the level of a false premise of constitutional magnitude. *Cf. United States v. Hartford*, 489 F.2d 652, 656 (5th Cir.1974) (sentencing court's statement that there may be no such thing as rehabilitation for people who push drugs, although not approved of by appellate court, did not indicate that the court had imposed sentence mechanistically); *see also United States v. Hendrix*, 752 F.2d 1226, 1234–35 (7th Cir.) (inference drawn by court that bank teller's death by cancer had been speeded by the trauma of bank robbery was not so unsupported by record as to have denied defendant due process), *cert. denied*, —— U.S. ——, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985).

Also significant is the district court's articulation of additional factors for the sentence imposed, *e.g.*, the amount of narcotics involved, Santamaria's use of his estranged wife, and the secret compartments built into his car. This lessens any concern we might have that the defendant's sentence was based upon an improper assumption. *See United States v. Miller*, 589 F.2d 1117, 1139 (1st Cir.1978) (articulation by sentencing court of additional reasons for maximum sentence allayed fear that sentencing decision was tainted by impermissible considerations), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *United States v. Stevenson*, 573 F.2d 1105, 1107 (9th Cir.1978) (even assuming that court in sentencing defendant to higher term than that of his co-defendant relied upon a false understanding that the co-defendant had no prior record, that inaccuracy, which was pointed out to the sentencing court, when balanced against other substantially accurate factors that were considered, was not of constitutional magnitude). For the foregoing reasons, we hold that Santamaria was not denied due process.

### IV. *Failure to Attach Findings to Presentence Report*

■ Santamaria correctly argues that the requirements of rule 32 of the Federal

Rules of Criminal Procedure were not fully complied with in this case. Rule 32(c)(3)(D) provides that, where the defendant alleges factual inaccuracies in a presentence report, the court shall make findings as to any controverted matter or make a determination that no such finding is necessary because the matter will not be taken into account in sentencing. The rule further provides that a written record of such findings and determinations shall be appended to and accompany any copy of the presentence report thereafter made available to the Bureau of Prisons or the Parole Commission.

Here, although the sentencing court indicated that it would not take into account information in the presentence report regarding the alleged Canadian drug transaction, it did not attach a record of that determination to the report. Nor did the court attach a record of its finding regarding the interpretation to be given to the assertion in the presentence report, objected to by defense counsel, that Santamaria had had a "change of heart" regarding cooperation. However, the failure to append the required materials does not necessitate resentencing. The function of the provision of rule 32 requiring attachment of a court's findings and determinations to the presentence report is to prevent a defendant from being prejudiced in the future by errors in the report, which may accompany him throughout his dealings with the correctional system. As the Advisory Committee note on rule 32(c)(3)(D) states:

> [T]he Bureau of Prisons and the Parole Commission make substantial use of the presentence investigation report. Under current practice, this can result in reliance upon assertions of fact in the report in the making of critical determinations relating to custody or parole.

*See United States v. Castillo-Roman,* 774 F.2d 1280, 1285 (5th Cir.1985) (transcript reflecting determination of sentencing court would be attached to presentence report on remand so that disputed information would not be relied upon as having been previously established and thereby adversely affect defendant's confinement or

chance of parole). This function is served by a remand for the required attachments to the report. *See id.* at 1284–85 (failure to attach finding does not call for vacation of sentence as the remedy contemplated will be afforded by remand for attachment); *accord United States v. Eschweiler,* 782 F.2d 1385, 1390 (7th Cir.1986). We therefore remand for that purpose.

### V. *Special Parole Term*

■ Santamaria pleaded guilty, under Count II, to knowingly and intentionally possessing with intent to distribute one kilogram or more of a mixture containing cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and was sentenced on that count to a sentence of twenty years, a special parole term, and a fine. The government now concedes that the special parole term was improperly imposed.

Prior to amendment in October 1984, the penalty provisions set forth in 21 U.S.C. § 841(b)(1)(A) (1982) required imposition of a special parole term upon a person convicted under 21 U.S.C. § 841(a) of an offense involving a narcotic drug. Those penalty provisions were recast by section 502 of the Comprehensive Crime Control Act of 1984, 21 U.S.C.A. § 841(b)(1)(A) (West Supp. 1985). The new provisions prescribe penalties of different magnitudes depending upon the amount of narcotics involved in an offense, and raise the maximum penalties. Under the new provisions, however, a special parole term, while mandatory for offenses involving less than one kilogram of a narcotic drug, is not authorized for an offense that involves one kilogram or more of a narcotic drug—an offense for which Santamaria was convicted. Thus, there is no basis here for the imposition of a special parole term, and that provision of the sentence is vacated.

### VI. *Conclusion*

The judgment of the district court is affirmed except: (1) the special parole term is vacated, and (2) the case is remanded for compliance with Fed.R.Crim.P. 32(c)(3)(D).

*Affirmed as modified and remanded.*