UNITED STATES of America, Appellee,

v.

**Carlos David SANTANA, a/k/a Carlos El Marcao, Defendant, Appellant.**

No. 89–1359.

United States Court of Appeals, First Circuit.

Heard Feb. 9, 1990.

Decided March 21, 1990.

Lydia Lizarribar–Masini, by Appointment of the Court, for defendant, appellant.

Rosa Emilia Rodriguez Velez, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for U.S.

Before CAMPBELL, Chief Judge, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Defendant-appellant Carlos David Santana, a/k/a Carlos El Marcao, challenges the sufficiency of the evidence admitted in support of a charge of aiding and abetting the possession of cocaine, with intent to distribute. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. Upon review of the record, we sustain the conviction. We find no error in the admission of a recording of an alleged conversation among appellant, a co-defendant and a confidential informant.

## I

## FACTUAL BACKGROUND

Near the end of May, 1988, Angel Luis Rivera (Angel), a confidential informant for the Drug Enforcement Administration (DEA), discussed "drugs," "drug prices," and "business" with Jose Vasquez Torres, appellant's co-defendant, and with a man called "Carlos Marcao" to whom Angel was introduced during the same conversation.[1] On June 8, 1988, a recording was made of a conversation between Angel and Vasquez Torres, during which the latter was introduced to Domingo Carrasquillo, a DEA undercover agent who was to make an undercover drug "buy" from Vasquez Torres.[2] On June 16, 1988, Angel discussed with appellant Santana a purchase of one ounce of cocaine which was to take place the following day, June 17, at 11:00 a.m.

Angel was already at the Vasquez Torres business premises in Rio Piedras on June 17 when undercover agent Carrasquillo arrived about 11:00 a.m. As the appellant had not yet arrived, Angel and Vasquez Torres went looking for him in the area of Brambaugh Street, where they spotted appellant's Buick and then the appellant, who was seen looking in the direction of the Vasquez Torres place of business where Carrasquillo was standing, some 150 feet distant. Angel pointed out the appellant to Carrasquillo and to Jose Morales, the DEA agent in charge of the surveillance team. Vasquez Torres then walked over to the appellant, returned to where Carrasquillo was standing, and handed cocaine to Carrasquillo, who handed $1,300 to Vasquez Torres, completing the transaction. Although Carrasquillo observed something being handed from the appellant to Vasquez Torres before Vasquez Torres handed the cocaine to Carrasquillo, from that distance Carrasquillo could not identify the item.

Agent Jose Morales not only witnessed both exchanges from much nearer,[3] he also corroborated the presence of Angel and Carrasquillo in the immediate vicinity of the Vasquez Torres business premises at the same time. Agent Morales testified to having witnessed Vasquez Torres give appellant Santana a slap on the shoulder, and to having heard Vasquez Torres say, " 'Carlos,' and a cuss word. And [Vasquez

---

1. At trial, Angel pointed out appellant Santana as the person who had been introduced to him by the name of "Carlos Marcao."

2. The admission of this recorded conversation is not at issue on appeal.

3. Agent Morales observed the exchange between appellant and Vasquez Torres, and overheard their conversation, from a distance of approximately twenty feet.

Torres] told [appellant Santana], 'I left, I have got the man there waiting with the money. Come on, let's take it over.' " Trial Transcript at vol. II, p. 17. According to Agent Morales, appellant immediately went to the Buick automobile, sat on the seat, then got out and closed the door. Appellant then placed his right hand in the right-hand pocket of his blue jeans and walked a short distance in front of the car before Vasquez Torres said, "Give it to me, give it to me. I will deliver it." *Id.* Immediately the appellant put his right hand in the front pocket of his trousers, removed something, and gave it to Vasques Torres, who put the item in his own pocket. Vasquez Torres then returned directly to his place of business, where the cocaine exchange took place between him and Carrasquillo.

Angel testified that on June 23, 1988, approximately one week after their Rio Piedras transaction, he had a conversation with the appellant and Vasquez Torres. During that conversation, according to Angel, appellant Santana stated that he was the boss, the only one who could set the price for the cocaine, and that "[h]e did that business in order to help Cheo." Trial Transcript at vol. I, p. 44. We discuss the few significant arguments asserted in support of the appellant's challenge to the admission of a recording of this conversation, which is the primary focus of this appeal.

## II

## DISCUSSION

### a. *Authentication of Voice Recording*

■ We turn first to the authentication testimony given in the presence of the jury by Samuel Rivera Aponte (Aponte), an undercover police officer assigned to the DEA task force. Aponte was the operator of the KEL equipment which was used to *receive and record* the June 23rd conversation among Angel, appellant Santana and Vasquez Torres. Beforehand, Angel had been fitted with a "body wire" with which to intercept and transmit their conversation to the KEL receiver and recorder being operated by Aponte. At trial, Aponte identified three cassettes, previously dated and initialed by him, as cassette recordings which were made of the June 23rd conversation while he operated the KEL equipment. Aponte testified that he had monitored the conversation aurally as the recording was being made.

The *nicknames* of the persons whose voices were recorded, according to Aponte, were "Cheo Pantalla," established by other evidence in the case to be a nickname of Vasquez Torres, and "Carlos" (referred to by Angel during the course of the June 23rd conversation as "Pepe Marcao") shown by the evidence to be another name by which Santana was known. Aponte was able to identify the voice of "Cheo Pantalla" on the recording, as that of Vasquez Torres, because Aponte had heard Vasquez Torres speak when he arrested him. Aponte had not heard "Carlos" speak prior to June 23, and Aponte's voice identification of "Carlos" was excluded when Aponte conceded that it was based on what others had told him.

Next, the government recalled Angel, who confirmed that he had been fitted with a "wire" with which to record the June 23rd conversation among "Cheo Pantalla," "Carlos" and himself. Angel testified that he later listened to the recording and identified for law enforcement agents the names of the persons whose voices were recorded. The trial judge and jury observed Angel while he identified the individual voices as the recording was played to the courtroom. Angel identified his own voice; the voice of "Carlos," whom Angel identified as Santana; and the voice of "Cheo," who was identified by Angel, Aponte, and other witnesses, as Vasquez Torres.[4]

The admissibility of voice recordings and voice identifications is left to the sound discretion of the trial judge. *United States v. DiMuro*, 540 F.2d 503, 512 (1st

**4.** The jury was thoroughly exposed to any testimonial confusion and contradictions, as well as biases, prejudices and other credibility considerations that may have affected the credibility of the authentication witnesses and the weight to be given transactional testimony.

Cir.1976) (decided prior to effective date of Fed.R.Evid. 901), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977).[5] The district court in this case conditionally determined that the voice recording had been authenticated, *see* Fed.R.Evid. 104(b) & 901(a), on the basis of evidence sufficient to support a finding that it was a recording of a conversation on June 23, 1988, among appellant Santana, Angel and Vasquez Torres, *see id.* Rule 901(b)(5), as represented by the government, *see id.* Rule 901(a). No more was required for authentication. Rather, far less has been found sufficient for the authentication of voice recordings. *See, e.g., United States v. Rengifo,* 789 F.2d 975, 978 (1st Cir.1986) (neither testimony of participant in conversation, nor that of person who monitored recording, is necessary to authenticate recording) (telephone conversation); *United States v. Di-Muro,* 540 F.2d at 513 (rejecting challenge to adequacy of authentication of voice recording based on four year interval between recording and voice comparison).

The long and the short of it is that once it appears that the district court properly admitted the cassette recording, *see* Fed.R. Evid. 104, 401, 402 and 901(a), (b)(1), (5) on a sufficient evidential predicate of relevancy and authenticity, *see id.* Rules 402 & 901(b)(1), (5), all else to which appellant adverts on appeal goes to the weight of the evidence, which was within the province of the jury.

#### b. Sufficiency of Evidence

■ We weigh the evidence, viewed in the light most favorable to the prosecution and without assessing the credibility of the witnesses, to see if a rational trier of fact could have concluded that every essential element of the crime charged has been proven beyond a reasonable doubt. *United States v. Torres Lopez,* 851 F.2d 520, 527 (1st Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). Defendant may not be convicted of aiding and abetting the possession of cocaine, with intent to distribute, merely on proof that he was a knowing spectator. *United States v. Martinez,* 479 F.2d 824, 829 (1st Cir.1973). The government must prove beyond a reasonable doubt that the defendant participated in the alleged criminal venture and *intended* by his actions to make it succeed. *Id.* We bear in mind also, in cases largely based on circumstantial evidence, that the appropriate test is " 'whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.' " *United States v. Francomano,* 554 F.2d 483, 486 (1st Cir.1977) (quoting *Dirring v. United States,* 328 F.2d 512, 515 (1st Cir.1964)).

■ On the basis of the admissible evidence, and reasonable inferences which may be drawn therefrom, the jury rationally could have found the following facts, beyond a reasonable doubt. The conversation of June 23rd occurred in back of the Burger King in Rio Piedras. The meeting had been prearranged by Angel to set up a *future* drug buy from appellant Santana and Vasquez Torres. *As Angel described the conversation in his testimony at trial,*[6] however, the following statements

---

**5.** Federal Rule of Evidence 901 states in relevant part:

**(a) General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

**(1) Testimony of witness with knowledge.** Testimony that a matter is what it is claimed to be.

. . . .

**(5) Voice identification.** Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Fed.R.Evid. 901(a), (b)(1), (5).

**6.** Our review is impeded somewhat by the absence of a transcript of the June 23rd recording and of any *trial transcript* of the playing of the recording to the jury. Although transcripts were prepared (in English) of the pertinent portions of the recorded conversation (in Spanish), the district court exercised its discretion, *see*

were made by Santana in the presence of Angel and Vasquez Torres.

> Then Carlos told me (Angel), 'I have to talk to you.' Then he informed me that he is the one who sets the price of the drugs; that nobody sets the price on it. *He did that business in order to help Cheo.* The best thing is to set it cheap.

Trial Transcript at vol. I, p. 44 (emphasis added). We conclude that the recording of the conversation of June 23, 1988 was properly authenticated and admitted, but that, with or without it, there was sufficient evidence to demonstrate appellant's guilt beyond a reasonable doubt.

Several witnesses to the June 17 cocaine "buy" provided direct evidence of appellant's presence, by prearrangement, at the scene of the "buy." There was direct evidence of the overheard conversation between appellant and Vasquez Torres immediately before appellant was observed handing an item to Vasquez Torres, which he proceeded to hand over to Carrasquillo in return for the agreed price for one ounce of cocaine. The combined effect of the direct and circumstantial evidence was sufficient to convince a rational jury, beyond a reasonable doubt, not only that Santana participated in the alleged possession of cocaine, with intent to distribute it, but that his knowing participation was indispensable to the fruition of the criminal venture. *See, e.g., United States v. Martinez,* 479 F.2d at 829.

AFFIRMED.

*United States v. Rengifo,* 789 F.2d at 982–83, by sustaining defendant-appellant's objection to their use as an aid to the jury. *But cf. Rengifo,* 789 F.2d at 983 (rejecting challenge to jury's use

*during deliberations* of English version of transcription of Spanish language recordings admitted in evidence).