# United States Court of Appeals
## For the First Circuit

No. 12-1167

UNITED STATES,

Appellee,

v.

ERIC MURDOCK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Brock D. Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and McConnell, Jr.,* District Judge.

Felicia H. Ellsworth, with whom Boyd M. Johnson III, Caitlan
W. Monahan, and Wilmer Cutler Pickering Hale and Dorr LLP were on
brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with
whom Thomas E. Delahanty II, United States Attorney, was on brief,
for appellee.

November 20, 2012

*Of the District of Rhode Island, sitting by designation.

**McCONNELL**, <u>District Judge</u>.  A jury convicted Eric Murdock of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Mr. Murdock was sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), to 216 months in prison.  On appeal, Mr. Murdock argues that the district court erred in three ways, by (i) refusing to suppress his statement regarding a bag containing firearms; (ii) admitting an audio recording of a telephone call; and (iii) sentencing him under the ACCA.  Finding no error in the district court's rulings, we affirm.

**I.**

Mr. Murdock challenges the district court's denial of his motion to suppress a statement he made to the police regarding the color of a bag containing firearms and ammunition.  Mr. Murdock contends that his statement should have been suppressed because he was in custody and not given <u>Miranda</u> warnings.

We recount the facts as supportably found by the district court, including any inferences drawn from those facts.  <u>United States</u> v. <u>Crooker</u>, 688 F.3d 1, 3 (1st Cir. 2012).  Here, those facts and inferences are taken from the bench decision issued after hearing Mr. Murdock's motion to suppress, as well as testimony at that hearing.

On August 20, 2010, Mr. Murdock was at the Eliot, Maine police station on an unrelated charge.  He was released, subject to bail conditions prohibiting him from possessing firearms and

requiring him to submit to searches of his home and his person. At that time, Mr. Murdock and his wife were staying at a residence on Young Street in South Berwick, Maine.

An agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") contacted South Berwick police officer Jeffrey Pelkey and told him that Mr. Murdock had been released from the Eliot police station and was headed home to South Berwick. ATF had been told that Mr. Murdock may have received some firearms in the mail. Concerned that those firearms were at Mr. Murdock's residence, the ATF agent asked Officer Pelkey to ensure that no firearms were there. Officer Pelkey requested and received a facsimile of the bail bond containing the firearms ban and the requirement that Mr. Murdock submit to searches of his home and his person.

When Officer Pelkey arrived at the Young Street residence where Mr. Murdock was staying, Mr. Murdock and his wife already had exited their car and started walking to the residence. Officer Pelkey, who was in uniform, verbally ordered Mr. Murdock to stop, but Mr. Murdock continued walking away from him. Officer Pelkey unholstered his firearm, kept it at his side, and ordered Mr. Murdock to stop and come back. Mr. Murdock complied. Then Officer Pelkey reholstered his weapon, spoke to Mr. Murdock, and patted him down. Officer Pelkey advised Mr. Murdock that officers were searching for weapons pursuant to his bail conditions.

-3-

Within about a minute, four additional law enforcement officers arrived; three officers were in uniform while one was not, but that officer had his badge and firearm. The owner of the Young Street residence, John Belliveau, came to the front door and spoke with Officer Pelkey. Mr. Belliveau consented to a search of the entire residence, not just the area where Mr. Murdock was staying.

During the next forty-five minutes to an hour, Mr. Murdock remained on the small front lawn, an area approximately 12 to 15 feet by 20 feet. Mr. Murdock spoke to his wife, used his cell phone, sat in a chair, and drank a beverage. He was not handcuffed or restrained, was not told that he could not leave, and was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Most of the time, one or two officers remained with Mr. Murdock.

While Mr. Murdock was on the lawn, officers searched for firearms. In the trunk of a car garaged on the premises, officers found a red overnight bag containing two handguns and ammunition. The bag was given to Officer Pelkey, who carried it from the garage towards the front lawn, holding it on his side so it was not visible to those on the lawn. Officer Pelkey announced that he had found "the blue bag with your weapons in it." Mr. Murdock interjected that the bag was red, prompting Officer Pelkey to agree that the bag was red.

Officer Pelkey also spoke to Mr. Murdock about a trailer that was on the property. The trailer belonged to Mr. Murdock and the officers wanted to search it. It had two separate doors that were padlocked, and Mr. Murdock gave the officers a wad of keys to see if any would fit in the locks. When none of the keys worked, the officers told Mr. Murdock that they would probably be breaking one of the locks. Mr. Murdock requested that the officers break the smaller lock as it was less expensive to replace. The officers broke the smaller lock.

Ultimately, Officer Pelkey informed Mr. Murdock that Mr. Belliveau did not want him staying at the Young Street residence any more. Mr. Murdock called his son, and then his son came and picked him up.

Before trial, Mr. Murdock moved to suppress his statement regarding the color of the bag. He argued that he was in custody and not given his <u>Miranda</u> warnings, so the statement should be suppressed. After hearing testimony and argument, the district court ruled that Mr. Murdock was not in custody for <u>Miranda</u> purposes and denied the motion to suppress. The district court reached this conclusion by conducting an objective analysis of the following circumstances: the location and duration of the encounter; the number of officers; the officers' activities; Mr. Murdock's behavior on the lawn; and the brief drawing of one firearm by an officer when Mr. Murdock did not comply with an order.

We review de novo a district court's ultimate legal decision to deny a motion to suppress, and review for clear error the district court's underlying factual findings. United States v. Lawlor, 406 F.3d 37, 41 (1st. Cir. 2005). "Deference to the district court's findings of fact reflects our awareness that the trial judge, who hears the testimony, observes the witnesses' demeanor and evaluates the facts first hand, sits in the best position to determine what actually happened." United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997). For Mr. Murdock to succeed in his challenge to the denial of his motion to suppress, he "must show that no reasonable view of the evidence supports the district court's decision." United States v. Dunbar, 553 F.3d 48, 55 (1st. Cir. 2009) (quoting United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008)).

For Miranda rights to arise, an individual need not be under arrest but must be in custody. Crooker, 688 F.3d at 10-11 (quoting United States v. Guerrier, 669 F.3d 1, 6 (1st Cir. 2011)). To ascertain whether someone was in custody for Miranda purposes, a district court "examines the circumstances surrounding the questioning and then it sees whether those circumstances would cause a reasonable person to have understood his situation to be comparable to a formal arrest." Guerrier, 669 F.3d at 6. This analysis is guided by several factors, including "where the questioning occurred, the number of officers, the degree of physical

restraint, and the duration and character of the interrogation." Id. (quoting United States v. Teemer, 394 F.3d 59, 66 (1st Cir. 2005)).

Mr. Murdock contends that he was in custody when he rebutted Officer Pelkey's characterization of the bag as blue. He argues that a reasonable person in his situation would not have felt free to leave and therefore he was in custody. Mr. Murdock focuses primarily on the initial stop, the number of officers present, his constant monitoring by one or two officers, that he was the target of the search, his confinement to a "very small" front lawn for nearly an hour, and that he was not told that he was not under arrest.

Our review reaches the same conclusion as the district court. Mr. Murdock responded to the "blue bag" comment while he was in familiar surroundings, where questioning generally is considered less intimidating. United States v. Hughes, 640 F.3d 428, 435-36 (1st Cir. 2011). Five officers were present, with one or two keeping an eye on Mr. Murdock most of the time and the others searching the premises. This number of officers is not overwhelming. See id. at 436. While Mr. Murdock remained on the small lawn, he stood, sat, drank a beverage, and used his phone. Mr. Murdock was not handcuffed or arrested. See id. (finding no custody where defendant was confined to a small area, but nothing suggests his personal space was invaded and no meaningful restraint

was applied to defendant). Although Officer Pelkey drew his firearm, he did so only once and briefly when Mr. Murdock did not comply with his order to stop. See Crooker, 688 F.3d at 11 (finding no custody where officers holstered guns after house was cleared). Mr. Murdock remained on the lawn for forty-five minutes to an hour, a relatively short period of time. See id. at 5, 12 (finding no custody where a multiple-hour search was conducted); see also Hughes, 640 F.3d at 437 (finding no custody where defendant was interviewed for ninety minutes). Finally, Mr. Murdock's interactions with Officer Pelkey appear to have been courteous and compendiary: his comment regarding the red bag was brief; he negotiated regarding which lock on the trailer would be broken; and he responded to the news that Mr. Belliveau wanted him to leave by phoning his son. See Hughes, 640 F.3d at 437 (finding no custody where "the ambiance was relaxed and non-confrontational").

The familiar surroundings, few officers, lack of physical restraint, short time period, and nature of the verbal exchanges lead us to conclude that Mr. Murdock was not in custody for Miranda purposes. The fact that Mr. Murdock did not receive warning of his Miranda rights therefore was not a constitutional violation and the district court did not err in denying Mr. Murdock's motion to suppress.

Mr. Murdock next challenges the district court's admission of an audio recording of a telephone call to South Berwick Police Chief Dana Lajoie. He argues that the district court abused its discretion by admitting the recording because the government introduced insufficient evidence from which the jury could have concluded that Mr. Murdock was the caller.

"The admissibility of voice recordings and voice identifications is left to the sound discretion of the trial judge." United States v. Santana, 898 F.2d 821, 823 (1st Cir. 1990). We review the district court's admission of the telephone call for abuse of discretion. See United States v. Díaz, 597 F.3d 56, 64 (1st Cir. 2010).

Before trial, Mr. Murdock moved in limine to exclude the audio recording. The district court found "from the transcript that the jury could circumstantially reach a conclusion on authentication from the contents of the call." Although the government offered to present witnesses who could identify Mr. Murdock's voice, the district court declined to hear any as it was "content that there is enough, because of the transcript, to deny [the] motion in limine . . . ."

During the call, the caller identified himself as Eric Murdock, named his wife and provided her maiden name, explained that he was a felon but his wife was not, recited facts regarding two

firearms arriving in South Berwick by mail, and indicated that the firearms were taken by a SWAT team. Chief Lajoie responded that those firearms were in the possession of the South Berwick police department. When the caller explicated that the firearms were a gift for his stepson and he wanted him to have them, Chief Lajoie told the caller to provide a written statement that the firearms were a gift. In addition, Chief Lajoie explained that ATF had to complete a trace process, and it would take some time. When the caller asked if he could get a call back when the firearms were ready, Chief Lajoie said yes, and asked the caller for his name and number. The caller replied that he was Eric Murdock, saying and spelling both names, and provided a phone number.

To authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury." United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994). Focusing on conversations, it is unnecessary for someone familiar with the caller's voice to identify it prior to the evidence being admitted. United States v. Ingraham, 832 F.2d 229, 236 (1st Cir. 1987); see also United States v. DeSimone, No. 11-

-10-

1996, 2012 WL 5458440, at *9 (1st Cir. Nov. 9, 2012). Conversations may be authenticated by circumstantial evidence. Id.

Mr. Murdock contends that the mere assertion of identity by the caller is insufficient evidence of authentication. Absent confirming circumstances, we do not disagree. However, the district court did not rely on only the assertion of identity, but also on the contents of the call. The caller expressed knowledge of numerous precise details regarding Mr. Murdock, his wife, the arrival and seizure of the firearms, as well as his son. Under these circumstances, we discern no abuse of discretion.

## III.

Lastly, Mr. Murdock challenges the district court's determination that he fell within the purview of the ACCA. The ACCA mandates a 15-year minimum sentence for a person convicted of certain federal crimes, including being a felon in possession of a firearm, upon a showing that the defendant was previously convicted of three predicate offenses. 18 U.S.C. § 924(e). Specifically, Mr. Murdock challenges the sufficiency of the materials submitted to support predicate convictions in Virginia and Florida.[1] He

---

[1] Although Mr. Murdock argued in the district court that his prior conviction for assault and battery with a dangerous weapon in Massachusetts did not categorically qualify as a predicate offense under the ACCA, Mr. Murdock does not argue that here. After his sentencing but before the filing of his appellate brief, this Court held that a conviction for Massachusetts assault and battery with a dangerous weapon qualifies as a predicate offense under the ACCA. See United States v. Hart, 674 F.3d 33, 44 (1st Cir. 2012). Eric B. Murdock is the name of the defendant in a document submitted in

argues that the government did not satisfy its preponderance of the evidence burden to show that he is the same person as the person previously convicted of those two crimes.

"We review the determination that a defendant is subject to an ACCA sentencing enhancement <u>de novo</u>, but we review the district court's factual findings underlying the determination for clear error." <u>United States</u> v. <u>Bennett</u>, 469 F.3d 46, 49 (1st Cir. 2006) (internal citations omitted). As Mr. Murdock's challenge to the sufficiency of the evidence supporting his prior convictions is a factual one, "due deference" is given to the district court's findings and we reverse only for clear error. <u>United States</u> v. <u>Diaz</u>, 519 F.3d 56, 67 (1st Cir. 2008). "[A] district court's choice between two plausible, but conflicting, interpretations of a factual scenario cannot amount to clear error." <u>United States</u> v. <u>Bryant</u>, 571 F.3d 147, 156 (1st Cir. 2009) (quoting <u>United States</u> v. <u>Carrasco</u>, 540 F.3d 43, 49 (1st Cir. 2008)).

To support the 1979 Virginia robbery conviction, the government submitted three documents from the Circuit Court for the City of Newport News; one was a certified copy of a document that the district court concluded was a judgment. All three documents indicate that the Virginia robbery defendant was Erick Ben Murdock,

support of the Massachusetts conviction.

-12-

with a "k" in Erick and the middle name "Ben."[2]  In addition, the certified document contains a sentence in the middle of it naming the defendant as "Garry Wayne Vickers."

To support the 2007 Florida aggravated assault conviction, the government submitted certified copies of several documents from the Clerk of the Circuit Court in Pinellas County, Florida.  The Florida documents contain the name Eric Murdoch, with an "h" in Murdoch.

Regarding the spelling of the defendant's name and the use of a middle name, the district judge overruled Mr. Murdock's objections.  The district court noted that there was not a serious challenge to identity and spelling is often mistaken.  The district court stated that a name misspelled by a single letter or the use of a middle name was not a basis to ignore the convictions.  Regarding the inclusion of a Mr. Vickers in the midst of a Virginia document, the district court examined that document and the other Virginia documents and determined that the inclusion of Mr. Vickers was a "scrivener's error."  The district court was satisfied that Virginia robbery defendant was the same Mr. Murdock appearing before it.

---

[2]  At sentencing, Mr. Murdock objected to the Presentence Investigation Report using the name Eric B. Murdock.  He noted that the indictment in this matter named him as Eric Murdock with no middle initial.  The district court overruled this objection because it did not hear a sufficient challenge to the identity of the defendant.

On appeal, Mr. Murdock argues that the district court committed clear error when it found that the government had proved the fact of prior conviction for these two predicate offenses. We disagree. The district judge carefully considered Mr. Murdock's arguments, but nevertheless ruled in favor of the government.

For the ACCA to apply, a sentencing judge "need only find prior convictions by a preponderance of the evidence." Diaz, 519 F.3d at 67. "The Government may satisfy its burden by producing a certified copy of the conviction or an equivalent proffer." United States v. McKenzie, 539 F.3d 15, 19 (1st Cir. 2008). Moreover, docket reports, charging documents, written plea agreements, and other comparable judicial records may be used as evidence to support prior convictions. Id.; see also United States v. Sumrall, 690 F.3d 42, 44 n.2 (1st Cir. 2012).

Based on our review of the record, the district court's reading of the Florida and Virginia records was plausible. We do not find clear error in the district court's determination that the Mr. Murdock before it was the same individual convicted of robbery in Virginia and aggravated assault in Florida.

**Affirmed**.